Jasen Lynn DuShane in pro se
Reg. No. 95629-011
P.O. Box 33
Terre Haute, In 47808

**FILED**

**07/30/2021**

**U.S. DISTRICT COURT**
SOUTHERN DISTRICT OF INDIANA
Roger A.G. Sharpe, Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA

JASEN LYNN DuSHANE,
      Plaintiff,

Vs.

Case No. 2:21-cv-00204-JPH-MG

L. DAVIS, MYERS, N. OSBORN, B. VIGIL,
      Defendants.

------------------------------------------------------------------------

### THIRD AMENDED COMPLAINT

------------------------------------------------------------------------

### A. PARTIES

1. I, Jasen Lynn DuShane, in pro se, am a citizen of Indiana and presently reside at P.O. Box 33 Terre Haute, In. 47808/Terre Haute U.S.P.

2. Defendant, L. Davis is a citizen of Indiana and presently resides at 4700 Bureau Rd. N. Terre Haute, In. 47801 (Is Sued in her individual and offical capacity [Psychology Services.]).

3. Defendant Dr. Myers is a citizen of Indiana and presently resides at 4700 Bureau Rd. N. Terre Haute, In. 47801 (Is sued in her individual and Offical capacity [Chief Psychologist]). Dr. Myers is the chief Psychologist, is Dr. Davis' direct supervisor and has authority to direct employees and make changes. Plaintiff notified Myers 2-18-2021 Prior to the actions herein and asked Dr. Myers to "intercede." SEE Exhibit-H (No response) On 4-29-2021 reported Dr. Davis' Conduct and asked for a meeting (no response). SEE Exhibit-K On 5-10-2021 both in person and Email reported fraudulant report 1-25-2021 by Davis (See camera footage 5-10-2021 Lunch Line 10:30am-12pm Dr. Myers refused to listen and became aggressive. SEE Also Exhibit-L-Reported Dr. Davis' Fraud and staff misconduct-No response). Myers remains complicit by diliberate ignorence and failed to supervise when asked and begged to intercede before harm was done...No response.

4. Defendant Nicole Osborn is a citizen of Indiana and presently resides at 4700 Bureau Rd. N. Terre Haute, In. 47801 (Is Sued in her Official and Individual Capacity).

5. Defendant Bianca Vigil is a citizen of Indiana and presently resides at 4700 Bureau Rd. N. Terre Haute, In. 47801 (Is Sued in her Official and Individual Capacity).

(Jurisdiction is pursuant to BIVENS)
(or any other applicable statute)

### C. NATURE OF THE CASE

On 02-24-2021 I filed an administrative remedy (grievance) against the defendant DR. Davis, practicing my right to redress my grievances. The grievance stated the Following:

1

"Dr. Davis is my current care provider from psychology. I am Care2-MH required
by policy to be seen once per 30 days and more upon request/need. I have not
seen Dr. Davis in 60 days (Dec. 28th 2020). On Jan 5th 2021 and Feb. 17th 2021
I requested to be seen by psychology and was not seen. Previously Dr. Davis
exhibited aggressive behavior that I am not comfortable with. Furthermore, in
response to a Bp8 previously Dr. Davis and Secchetti exhibited behavior that
appears to be retaliation...Reducing my care from every two weeks to once every
30 days, then now not respecting my wishes [to be seen]... I have symptoms of
severe depression, sever [sic] memory loss that is progressive and confusion,
headacks [sic], hyper vigilence PTSD"
           [Remedy Requested]
"Assign a doctor to care for me.
Provide Therapy
Research and test for early onset of dementia/brain trama"
                                                    (SEE Exhibit-A)Dated: 2-24-2021)
        (See Exhibit-H Feb. 17th Email Prior to grievence)
         ("Not heard from you in 53 days...I would love therapy...Please Help")


On 03-18-2021 I was notified by Dr. Osborn that my care level had been changed
by defendant Davis from Care2 to Care1 which does not require an inmate to be seen
"at least once per 30 days." It appeared to me that Dr. Davis was attempting to
cover up her neglect of not seeing the plaintiff (me and I herein) the minimum
"at least once per 30 days" and more upon request.

A review of the record will show that in fact the care level was Care2 on 02-23-2021
(See Exhibit-B Part One).Then the plaintiff filed his grievence 02-24-2021( Exhibit-A Supra)
" I am Care2-MH required by policy to be seen once per 30 days." Then on 02-25-2021,the
day after filing the care level was changed to Care1 (See Exhibit-B Part Two).

On 03-22-2021 I filed an administrative remedy (grievence) stating:


"Dr. Davis changed my care level AFTER I filed a Bp8 complaining thaT Dr. Davis
was neglecting to see me per Care2-MH policy and after my specific requests to
be seen for suicidle thoughts (Staff Jan 5th 2021) (Self Feb. and March) It appears
Davis changed my care level in direct responce [sic] to cover her not seeing me for
well over 60 days (policy states every 30 days). I have been attempting to resolve
issues with psychology by submission of a treatment plan and settlement (Received
by Osborn) AND I have specificly requested counseling regarding staff mistreament,
neglect and mental health abuse, to resolve these issues. Dr Osborn refuses to
counsel me regarding these issues. See record of attached"
   [Remedy Requested]
  1. Accept treatment plan
  2. Counsel regarding neglect/mistreatment
  3. Counsel regarding depression, suicidle thoughts
  4. Counsel regarding other reported symptoms"
                                        (SEE Exhibit-C Dated: 03-22-2021)

On 03-23-2021 Dr. Davis responded to the above grievence by stating:

"Mr. DuShane you were provided with a new clinician, as such, I no longer have
any involvement with your treatment. This is now the fourth administrative
remedy that you have submitted regarding the same issues, which has since been

"resolved. Your accusations are false and have no merit. I am now
under the impression that you are purposefully writing complaints
for no other reason than to be manipulative. As a result, this is
my formal warning that I will submit a stalking memo on you if I
receive another complaint with regard to this same issue. I have
not interacted with you since transfering you to a new provider.
If you have any concerns with regard to your treatment, it would
be in you best interest that you discuss and process them with your
new provider." (SEE Exhibit-D )

Notes: That a stalking charge is a code 225 and can be done by any government
employee:

"Prohibited Act Code, Stalking, is for the purpose of punishing repetitive
inmate behavior, e.g., loitering, staring, leering, inappropriate remarks
(short of insolence, profanity, or sexual proposals), that are not covered
by another prohibited act code. When staff encounter such behavoir, the
inmate should be specificly warned that it is inappropriate and must cease.
If the behavior fits another prohibited act code provision, the inmate
should be charged with violating that specific provision instead of stalking.
                                        (SEE Exhibit-E)

A stalking charge would result in the plaintiff losing priviledges, losing
good conduct time, getting kicked out of LCP program that he has been in for
over a year and most likely shipped to another prison. Accordingly, the plaintiff
took this as a clear threat of retaliation and stopped his grievence procedures
immediatly. I fear moving forward with any issues with regard to Dr. Davis. It is
unclear what could be considered the "same issue". Also, all told I have only
writen two grievences directly related to Dr. Davis (Exhibit A and C) The only
previous grievence agianst Psychology was against Dr. Secchetti who quoted Dr. Davis
writen to get my records (Resolved at first level)...So there was never any "Fourth
Administrative Remedy" and the issue was not "resolved," nor were they "the same."

It seemed clear to me that this was meant as a threat to stop me from addressing
my grievences. (Note: On 4-12-2021 Dr. Davis saw me for an hour clinical session
further proving her reasons "I no longer have any involvement with your treatment"
to be false).See Exhibit-I,J,...For notes added after "No longer" involved.

On 03-29-2021 Dr. Davis (Note: grievence for fraudulantly changing care level was
submited 03-22-2021) went back in to the record and changed the care level back to
Care2-MH. Dr. Davis back dated it to 02-25-2021 to erase the record of change (SEE
Exhibit-B Part Three). Dr. Davis who "no longer has any involvement with treament"
and has had very little contact with DuShane also change and added a new diagnosis
to DuShane's record of AntiSocial given to problem inmates. This diagnosis was done
(See Exhibit-I, Record of back dated care change and added diagnosis-after grievence)

six months early and over the previous diagnosis just done by a provider that spent nine months with the plaintiff. This seems like retaliation by Psychologist's Fallacy. Dr. Davis also falsified a report 1-25-2021 claiming to have seen DuShane 10:34am to cover her neglect (requested camera footage to show never left cell (See Exhibit-E).

Since the filing of this lawsuit the following actions have accured. On 3-18-2021 Osborn was assigned as the plaintiff's psychology doctor. Osborn was debriefed by defendant Davis. Since filing the Amended complaint the following actions have accured.

On 05-06-2021 I sent an email to psychology stating "I need to be seen ASAP. I am sorry. I am just trying to get help. I am sorry." SEE Exhibit-M At the same time I requested that the officers contact psychology. Approx. an hour later I sent another email stating "I need help please, I have cut myself" SEE Exhibit-N (8:05am). At approx. 10:45am I was going to lunch and saw Osborn walking. I informed her that I had cut myself about 30 times with a razor. They told me to go to chow they would see me later. At about 12pm officers came to take me to suicide watch.

On 5-11-2021 I sent an email to Osborn stating "I am requesting the services of psychology at this time." SEE Exhibit-O (No Response). On 05-12-2021 I sent an email to Osborn stating: " I am requesting to be seen. I am begging you to be proactive, I do not feel comfortable reaching out in crisis or after I hurt myself at this time considering the recent events [Refused to provide therapy on 5-6-2021 then I cut myself, then sent me to suicide watch] I am asking for proactive treatment while my mood begins to drop as it is now BEFORE crisis and self-harm which usually is impending from now as past experience has dictated. Please help me. Please? Thank you!" SEE Exhibit-P

Subsequently on 5-17-2021 I cut myself (did not call for help) about 30 times. On 5-27-2021 I cut myself (did not call for help)[See camera footage Unit-C1-Classroom-5 5-28-2021 7:40am-8am] . On 6-2-2021 I cut myself (did not call for help) [See Unit-C1 classroom-5 camera 7am-7:30am.

On 6-3-2021 my attorney David Fischer Esq. contacted the institution via email(No Response) and requested that psychology check on me. On 6-4-2021 I was shaking really bad/sad and crying. At approx. 1:30pm I asked the officer to call psychology and ask them to

The actions of the defendants have made it dangerous. They have labeled it "stalking" to ask for help when I am in crisis. They do not come when I do call for help. They threaten me with direct consequences when I try to write grievances. I have started not reporting my self-harm and stopped calling for help. There are types of programs (Stages) that are designed for inmates like me. SEE Exhibit-X I am scared. While I continue to feel like harming myself and killing myself a part of me is fighting and I want help in this fight. Please Help. I believe with this court's supervision and oversight, everyone can get out of their feelings and help me.

4

see me immediatly (Previously instructed by Osborn "He was instructed that if he is in crisis he needs to let the first available staff member know to contact psychology.") SEE Exhibit-Q  See also footnotes (Also sent email 6-4 "need to see somebody, please help" Exhibit-W)

Psychology responded "All our doctors are busy with other inmates." (To the officers)

> Policy is clear "Inmate requests for services are responded to immediatly for crisis situations or potential suicide risk, and ordinarily within three (3) working days for routine requests" SEE Exhibit-S

Approx. 20 minutes later an inmate returned from psychology. I asked the inmate if they were still "busy." (Not that busy is ever a reason to not respond). The inmate informed me that he was down at psychology for the last hour and he was the only one down there. He also said that Osborn was there with Myers when my call came over the radio and niether were "busy with other inmates." Later Cut self 60xs with razor.

On 6-7 I reported what happened 6-4 and Osborn put me on suicide watch.

On 6-11-2021 I wrote an email to Chief Myers SEE Exhibit-T

> "Request for informal resolution. Rather than keep filing over the same issues, I wish to present my issues directly to you for resolution...Previously I filed a administrative remedy [SEE Exhibit-Q and footnotes]...Recently 5-12-2021 I sent an email to Dr. Osborn stating: [See Exhbit-O Supra] Subsequently I cut myself 5-10 30xs, 5-17 30xs, 5-27 30xs, 6-2 30xs. On 6-3 my attorney emailed this institution and requested psychology see me. On 6-4 I was shaking real bad and sad and asked the officer to contact psychology. Psychology told him "all our doctors are busy with inmates." A review of the camera will show only one inmate with Dr. Carmichael. Plus in crisis 'busy' is not an excuse. I DO NOT HAVE OFFICERS CONTACT PSYCHOLOGY TO CHAT>IF I HAVE AN OFFICER CONTACT PSYCHOLOGY I AM IN CRISIS. This is proven by past records. Subsequently I cut self about 60xs SEE Classroom 5 C1 6-5 7:10am-7:30am    SEE Exhibit-T (No Response)

On 6-17-2021 I wrote an email to Dr. Myers informing regret that we could not resolve our issues. (8:03am) "I am assuming that you do not wish to resolve my issues." SEE Exhibit-U

On 6-17-2021 at approx. 3pm I was called to the Lieutenant's office. When I arrived at the lieutenant's office C/O Rogers asked me "do you want to read this or do you want me to read it to you?" He handed me two sheets of paper.

On 4-1-2021 I asked Osborn if I could email her in the event that I needed help do to my ongoing bought of depression. Osborn informed me that I could. On 4-7-2021 I emailed Osborn and asked to be seen "Not yet emergency, level 2" Later that day I emailed again and said I was getting worse, please see me (No Response). On 4-8-2021 I asked Chaplain Sutter to "please see me and also contact via phone Dr. Osborn Psychology...I have dropped into depression that I am worried about." SEE Exhibit-R I also asked the duty officer (The daily assigned officer that tours the units to check on things) Mason to contact Osborn. Both emailed Osborn. At approx. 1:30pm I sent a written request with an inmate that was handed to Osborn 4-8 at 1:35pm that said "please see me ASAP Level 1" No Response-Later that day I cut myself with a razor for the first time in my life.

In direct response to me writing an informal request to Chief Myers in an attempt to resolve grievable issues with Osborn, Bianca Vigil wrote a stalking warning. I have NO contact with Vigil and have not had any contact with Vigil since Sept. 2020 (Over 9 months). As we reviewed in Claim One of this herein Complaint (Supra at 3) "Prohibited Act Code, Stalking, is for the purpose of PUNISHING [emphasis added] repetitive inmate behavior, e.g. loitering, staring, leering, inappropriate remarks..." This would result a loss of good time/first step good time, priviledges, SHU time, getting kicked out of LCP program and shipped from prison.

Vigil directly qouted the email to Myers about Osborn "On 6-3 my attorney contacted... See Exhibit-T Supra at 5 as her reason. Vigil also attempted to relate our history from 9 months prior, and admitted to being upset that I reported her conduct to my care provider and her supervisors (including region). Vigil also claimed that back in Sept 2020 I told my subsequent doctor that I had "romantic feelings." THAT session was also recorded with Secchetti 9-18-2021 10am -12pm Unit C1 Classroom-5 AND that is not what I told to her. Regardless it is NOT relevent do to the issue being over and not relevent to Osborn or Myers. They are stretching to cover retaliation which is shown as the intent in claim One. Done only to silence me today. Which may connect to Davis.

On 6-22-2021 I spoke to Osborn. Osborn admitted to influencing Vigil in the writing of the stalking warning. When I asked Osborn if I could write a grievance regarding the issues without violating the warning Osborn responded ambiguously "I cannot advise you to write or not to write one." I informed Osborn that I do not deserve this. If they want me to sign a refusal and try and get help elswhere, I will. I do not want to be writen up. (I personaly believe Davis has also infuenced these actions).

I am scared that they are just trying to build a defense and build a case against me to try and retaliate and get rid of me. I already have issues with PTSD, Borderline Personalty Disorder and severe depression that makes me want to harm and kill myself.

I am begging this court to accept these merits without exhaustion. There is a difference here, Osborn did not directly order me to not write a grievance and I will tenderly try to exhaust but I am scared and I really want psychological help. I just want them to let go of any resentments and help me. Please accept these included defendants, the Emergency of  Claim Two and the additional claim Three as emergency merits and as a response to fear of retaliation or notify of severence at this court's discretion.

HISTORY: Vigil was my care provider from Dec. 2019-Sept. 2020. In Sept. I requested a new doctor. Vigil was not honest about how, why or the fact that it was me who asked for a new doctor. Vigil's only focus (as well as her coworkers) was damage control not my mental health or well being. Secchetti admitted Vigil told three different stories. I did inform the acting chief (Davis), Chief Myers, and Region of the video evidence while it was certainly still available. (9-3-2020 Unit-C1-Classroom-5 at 3:30pm-4pm). I reported Vigil's conduct to my provider Osborn after being presented with their spin. My intention was only to be heard and speak the truth not get anyone in trouble. I wanted help. I never deserved Vigil's spin. I was always a gentleman and Vigil and staff only cared about her image not my mental health or well being. Why did Vigil play the victim and me the villian? Why did Vigil continue to interfere with my proceeding doctors? Why was Vigil reading emails I sent to the Chief and my own doctor? To bring this up now after video may not be available is a violation of policy and due process and why FBOP has policies and time limits. It also makes it look as only retaliation to silence me now (maybe because video might be gone) that I am seeking resolution outside. The fact that even back in Sept. it was a spin lends more evidence to the view that their is NO valid reason for a stalking warning an it is ONLY to silence me and scare me (which it has). Again, I have no contact with Vigil and have not had any contact since Sept. 2020. Her charge is baseless.

## D.  CAUSE OF ACTION CLAIM ONE

The actions by the defendant Dr. Davis have violated and continue to violate the plaintiff's First Amendment Rights to Freedom Of Speech and his Rights to address his grievences. The actions by threat of consequences as explained in the Nature of Cause have caused a Chilling Affect on the plaintiff's First Amendment Rights. Retaliation for grievances (protested right) is violation of 1st Amendment rights.

Supporting Facts:

The plaintiff incorperates all facts outlined in Nature of Cause herein in this claim claim. The defendant made a clear threat to write the plaintiff up with a stalking charge. The threat was made in direct response to a rightfull grievance. The stalking charge is a code 225 supra which can result in loss of; priviladges, good conduct time, being kicked out of LCP program and loss of good time pursuant to First Step Act, and can cause plaintiff to be moved to another prison.

The baisis for the defendant's accussations and threat of write up is for:
1. "This is now the fourth administrative remedy that you have submitted regarding the same issue, which has been resolved."

The above three points fail because:

A. DuShane only wrote two grievences directly related to Dr. Davis and her conduct.
B. As we read in Exhibit-A and Exhibit-C the issues were not "the same" and the issue was new and was not "resolved."

2. Dr. Davis stated: "I no longer have any involvement with your treatment"

The above point fails because:

A. The grievence was about prior conduct and her attempt to cover her tracks and wrong doing.
B. Dr. Davis subsequently saw the plaintiff 04-12-2021 after reporting feeling suicidal and after cutting self 12 times with a razor 4-8-2021.

Dr. Davis further presented a veled threat by stating: "It would be in your best interest that you discuss and process them with your new provider."
(Note: In session 4-12 Davis warned "grievences" are only answered "begrudgingly See Ex-J)

Clearly the reasons for the defendant's threat of a stalking write up are clearly false and without merit, The plaintiff can only guess as to what could be considered "the same issue" or what could set Dr. Davis off. A FBOP staff (especialy female) can put a stalking charge on an inmate without much question. The plaintiff was forced to stop his grievance process out of fear of retaliation. Furthermore the plaintiff is bared from ever filing any grievances against Davis again (As we see from the record more issues I.E. false diagnosis and fake record of a session visit that never happened 1-25-2021, that since arose that could have been grieved.)

The actions of Davis froze the plaintiff's right to address his grievences and violated his First Amendment Rights. Davis clearly did block the ability to exhaust his remedies which therefore should be considered exhausted per PLRA.

7

E. CAUSE OF ACTION CLAIM TWO

The Plaintiff incorperates all facts and events from the Nature of The Case and Claim One Herein for this Claim. The Plaintiff charged that Defendants, Myers, Davis, and Osborn with a Violation of His Eighth Amendment Rights for deliberate indiference to a medical need and harm caused by it.

Supporting Facts:

The plaintiff has a documented history of suicide attempts (07/2012, 11-2016). A recomendation was brought with the plaintiff to be housed in a medical facility (SEE PSR and J&C US Dist. Court N. Dist. of Cal. 2:11-476-TLH). The plaintiff has been diagnosed with PTSD (from social isolation that has been assurbated by the COVID lockdowns), Borderline Personality Disorder (Which causes self-Harm and suicidle thoughts) and Depression.

1. The plaintiff requested psychology services 1-5-2021 through staff and was ignored. (Policy declares inmates request are to be reponded to immediatly or within 3 days)

2. Davis created a false visit 1-25-2021 where she claimed the plaintiff said "I don't need psychology for anything." See Exhibit-F Camera Footage that has been requested to be saved will show the plaintiff did not leave his cell.

3. For the month of January the plaintiff was Care2-MH required to be seen by policy "At lease once per month and more upon request/need." Plaintiff was not seen.

4. On 2-17-2021 requested to be seen. On 2-18-2021 asked Myers to intercied SEE Exhibit-H (No response-Nobody saw me in response or for February).

5. On 2-23-2021 wrote grievance to be seen and receive therapy and receive new doctor. EX-A

6. On 3-18-2021 saw Osborn and informed her  do to my feelings and past history I was scared I was going to start hurting myself. Asked for therapy.

7. On 3-24-2021 requested services (No Response)by Psych)-Chaplain did respond and help-Ex-Y

8. 4-1-2021 I saw Osborn and reported the previous weeks need to be seen and the chaplain's help. Osborn claimed to not understand my email as a request and said I could email. I informed her I was feeling suicidal. Requested weekly sessions and psychiatrist.

9. On 4-7-2021 requested to be seen twice via email to Osborn (no response).

10. On 4-8-2021 had staff contact Osborn twice and sent request (No response). Cut self

11. On 4-12-2021 I tried to have Osborn put me on watch or see me. I had to have and ask the Lt. to have Psychology see me. Davis saw me that day. "Osborn busy".

12. Suicide Risks were done; 4-12, 4-18, 4-28, I did not cut myself.

13. On 4-13-2021 Medical notified Psychology/Osborn of request to see Psychiatrist.

14. On 5-6-2021 called for help. Did not respond for 4 hours ("in meeting") I cut myself

15. On 05-28-2021 Medical agaisn requested I see Psychiatrist

16. On 6-3-2021 lawyer emailed institution requesting psychology see me (no reponse)

17. On 6-4-2021 I had Officer call for help from Psychology/said "busy" I cut myself

18. On 6-16-2021 finally saw psychiatrist who prescribed medication to date I have not got. (Normally takes only two week to see a psychiatrist, not two months)

In conclusion, Davis started the indiference by ignoring my requests and policy Jan and Feb. 2021. Davis then influenced Osborn by reports "Lying repeatedly, conning others, lack

of remorse, using appeal or humor to manipulate...DuShane's care level can be appropriatly decreased...has been provided a new provider who can determine if his symptoms are in fact acurate and genuine." SEE Exhibit-I This Psychologist Fallacy (Psychologist's Fallacy is the tendency to project one's point of view [personal feelings] onto a patient) I believe had a big influence on my "new provider" Osborn (who has not been a doctor with the FBOP a year yet) and also on Myer's deliberate indifference.

Furthermore at least in three seperate incidents the plaintiff called for the defendant's help prior to hurting himself and the defendants did not respond as policy calls for.

Policy is clear "Inmate's requests are responded to immediatly for crisis.."Ex-S Furthermore, after "self-injurious harm"there should be a"heightened staff response."

DuShane was being seen every two weeks for over 10 months and doing"fine." After writing psychology a grievance his care was reduced. Trial/interoggatories/discovery will likely show examples of care2-mh inmates seen every two weeks exactly like before and care3-mh inmates who are seen every week who are "doing better" than the plaintiff is. Do to this deliberate indifference the plaintiff has suffered and could suffer more.

### F. CLAIM THREE

The actions as described herein the "Nature of Cause" discribe a violation of the Plaintiff's First Amendment Rights by retaliation for a protected right to redress his grievances. In addition, the actions of the defendants can cause a cooling affect. This Claim is charged against Bianca Vigil and Nicole Osborn with Myers as supervisor.

Supporting Facts: The plaintiff incorperates all facts in other claims and the "Nature of Cause" Herein for this claim.

Both Vigil and Osborn conspired to retaliate by issuing a stalking warning in direct response to the plaintiff writing a request to informaly resolve grievable issues. The very fact alone that they had Vigil do it to try and hide or blur their intent only points more to a consiracy because of the lack of contact between the plaintiff and Vigil for over 9 months. Plus, Osborn admitted to influencing Vigil in writing it.

Grieving issues is a protected right. As shown in claim One, there was an intent from the start to use stalking as a way to retaliate which is widely abused by female staff. The plaintiff is scared at this point and begs for intervention.

### G. PREVIOUS LAWSUITS AND ADMINISTRATIVE RELIEF

1. I have NOT begun other lawsuits with the same facts anywhere.

2. I HAVE attempted to resolve the issues regarded in some of Part D & E

   A. I wrote a grievence (Exhibit-A/C) and was clearly threatened so I was

forced to stop the move forward with "exhaustion" out of fear.

3. I beg for this court to recognize the actions herein as exhaustion per PLRA

   (I was ordered to stop or face consiquences. This should qualify as exhaustion).

### H. PREVIOUSLY DISMISSED ACTIONS OR APPEALS

1. I have had a previous lawsuit that was dismissed prescreening WITHOUT prejudice.

   a. Parties to lawsuit: Jasen Lynn DuShane-Plaintiff
                                 Nevada Dept. of Corrections-Defendant

   b. Name and location of Court: U.S. Dist Court Northern Dist of Nevada, 3:15-cv-501

   c. Dismissed for failer to state a claim for which relief could be granted

   d. Dated: 2015    e. Disposition: 2015

### I. REQUESTED RELIEF

1. Declaration that First Amendment Rights were violated as to <u>Claim One</u> and <u>Claim Three</u>
   A. Punitive damages $ 2,500.00
   B. Compensatory Damages $ 600.00
2. Declaration that Eighth Amendment Rights were violated as to <u>Claim Two</u>
   A. Punitive damages $2,500.00
   B. Compensatory damages $ 600.00
   C. Injunction for FBOP Psychology Services to provide:(Injunction applies to all claims)
      a. Therapy once per week as care3 inmate (inmates who harm self weekly
      b. See Neuro Psychologist/Possible MRI/CT Scan
      c. Psychiatry as needed
      d. Research and provide treament plan for symptoms herein
      e. Provide indapendent psychologist and Psychiatrist evaluation
      f. Provide treatment program for symptoms and behavior
   The undersigned declares under penulty of perjury that he is the plaintiff
in the above action, has read it and that it is true and correct.

Executed at Terre Haute U.S.P. on 07-22-2021

                                       Jasen Lynn DuShane in pro se
                                       Plaintiff